ANNIE E. COSTELL

v.

SMITH COSTELL.

[Decided March 2d, 1905.]

1. In a suit for divorce from bed and board, a motion for leave to file a cross-bill charging adultery, and praying for an absolute divorce, made more than six months after issue joined, and after final hearing had been moved and a witness sworn for complainant, should be denied, where adultery was not pleaded as a recriminatory charge to the bill or supplemental bill, and no facts were shown excusing the delay in .presenting the cross-bill.

2. Where a husband has lost his affection for his wife and has conceived a hatred for her, and there is no probability that his feelings will ever soften, and their further association as husband and wife might be dangerous, a permanent severance from bed and board will be awarded the wife on proof of his extreme cruelty to her.

On bill for divorce from bed and board. Answer thereto, supplemental bill and answer thereto, and proofs on final hearing.

*Mr. Howard L. Miller* and *Mr. Frederick A. Rex,* for the complainant.

*Mr. William J. Kraft* and *Mr. Howard Carrow,* for the defendant.

GREY, V. C.

The complainant is the wife of the defendant. They were married in 1875, and have always lived in this state. She brings her suit for a decree of separation from bed and board because of his extreme cruelty, and for alimony. The cause has been brought to a final hearing on the issues joined in the bill of complaint filed in January, 1899, and the supplemental bill filed in 1901, and the defendant's answers to those bills.

The accusation in the original bill of complaint and in the supplemental bill is extreme cruelty. The defence pleaded in the answers to the bill and supplemental bill is a denial of any cruelty. No recriminatory charge that the defendant was guilty of adultery appears in either of the answers to the bills of complaint.

A recriminatory charge that the complainant had committed adultery with one Pitman is set up as a defence to a petition for alimony *pendente lite,* but no such charge has been pleaded by the defendant, either to the original or supplemental bill of complaint.

No pleading of the defendant presents, as an issue to be tried on this hearing, the recriminatory defence that the complainant had been guilty of an adulterous breach of her marriage vows, and for that reason had no status to ask the aid of the court by granting her a limited divorce and compelling her husband to observe his marital obligation to provide for her.

After the final hearing of the cause had been moved, and a witness sworn for the complainant, the defendant, for the first time (more than six months after issue joined), asked leave to file a cross-bill charging the defendant with adultery, with prayer for an absolute divorce. Nothing was exhibited to the court by way of showing of cause for this proposed radical addition (after the cause had been moved) to the issues to be supported or refuted by the evidence. It was thought to be unfair and unjust to the complainant to oblige her to answer at once so serious a charge, without any notice or previous opportunity for preparation to meet it, unless some sufficient reason were exhibited by the defendant in justification of the making of his motion at so late a period in the litigation. No attempt was made by the defendant to support his motion by proving any facts which explained his delay in presenting it to the court in time to enable the complainant to prepare for hearing on the new issue. For this reason the motion for leave to file a cross-bill charging adultery was refused.

As the cause progressed it appeared that the defendant sought (without any pleading charging the complainant with adultery) to bring that charge in evidence against her as a defence to his

alleged extreme cruelty upon the ground that her adultery was the occasion of his abandonment of her.

Such a defence ought probably to have been made by a recriminatory pleading, but upon the claim that her act of adultery was the reason the husband discarded the wife, evidence as to her alleged crime was admitted.

The testimony satisfies me that the defendant beat and abused his wife, turned her out of doors, and refused to provide for her or to harbor her, and that his conduct was so violent and persistent that it amounted to the extreme cruelty mentioned in the statute. I am strongly inclined to believe that to avoid a decree which would oblige him to pay her alimony, he arranged, after the original bill was filed, to have her again live in the same house with him—finally casting her off and refusing to provide for her.

The testimony presented by the witnesses offered on the part of the defendant in support of his denial of his cruel treatment of his wife did not impress me as truthful, or in any way reliable, when it was delivered on the stand. His witnesses appeared to be willing to deny everything which imputed to him any dereliction or misconduct of any sort or kind toward his wife, whether they had personal knowledge of the acts of cruelty proven or not.

It was claimed that the recriminatory testimony charging the wife with committing adultery with the men Pitman and Appley would show not only that she did commit that crime, but that her adultery was the occasion of her husband's abandonment of her.

The testimony offered on the part of the defendant seeks to prove that the complainant committed adultery with Pitman in the years 1896 and 1897. That testimony is evidently inspired by ill feeling and resentment, as in the case of Lillie Cramer, now Mrs. Rudolph, or is dependent upon the defendant's own evidence, or is utterly unreliable. Wherever any two witnesses attempted to narrate the same incident, their variances in essential particulars of date, place or actual happening, not only from each other, but from their own earlier affidavits, made their testimony unworthy of belief. I am satisfied that the husband

lived with the wife after he knew all about these charges with relation to Pitman, and that he did not believe them himself.

Both the wife and Pitman explicitly deny every inculpatory act referred to in the proofs. Both of them testified frankly and fully. I could see no indication of falsehood in what they stated. I have therefore felt bound to hold the complainant guiltless of that charge.

The adultery charged to have been committed with Officer Appley is presented by testimony which is even more unreliable, a woman who is a professional bawdy-housekeeper and an employed watcher being the principal witnesses. Neither of them, when on the stand, appeared to be telling the truth. The good faith and disinterestedness of the woman witness were, I think, successfully challenged. Both the defendant and Officer Appley denied all the charges against them. Their manner on the stand, and their fullness and frankness in making their denials, were satisfactory of the truthfulness of their statements.

It is to be noted that this latter charge of the wife's offence with Appley is claimed to have been continued during the summer and fall of 1896, and the woman witness testifies that the defendant, in the fall of 1898, told her that he knew his wife was in the habit of coming to her house, and forbade her to receive his wife.

All of the defendant's answers in this litigation—three in all, one to the original bill, one to the petition for alimony *pendente lite,* and one to the supplemental bill—were filed since the fall of 1898, yet not one of those answers mentions or in any way refers to his wife's alleged criminal conduct with Appley. The first time this alleged offence with Appley appeared in this cause was when the bawdy-housekeeper was called to the stand by the defendant on this final hearing.

I am satisfied that the weight and credibility of the testimony overthrows these accusations against the wife. The husband's own conduct is inconsistent with his own pretended belief in their truth.

The woman, the complainant, is about forty-five years of age. She has been married to the defendant for twenty-six years. Her husband has lost his affection for her and wants to be rid of

her.   But he never made any charge of unfaithfulness against her by any legal proceeding until she took steps to force him to support her.   Even then his charges appear only at the tail end of the litigation by way of evidence without previous allegation or notice to her that he expected to make them.

Upon the whole case, I am constrained to believe that the defendant has not supported these adultery charges by either the weight or the credibility of the evidence; that his abandonment of and cruelty to his wife were not related to these charges, and that a decree should be made in her favor.

It appears from the husband's conduct that he hates his wife, and at their time of life I see no reason to believe that there is any probability that his feelings will ever soften, and their further association together as husband and wife may be dangerous.

The decree should order a permanent severance from bed and board.

It has been shown that the defendant is a considerable owner of real property.   A proper sum of alimony, which accords with his circumstances in life and capacity to pay and her necessities, would be $8 per week.   She should also have costs of suit and a counsel fee of $50.

I will advise such a decree.